UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

COMMODITY FUTURES TRADING
COMMISSION,

               Plaintiff,

    v.

NISHAD SINGH,

               Defendant.

Case No. 23-CV-1684-PKC

[~~PROPOSED~~] SUPPLEMENTAL
CONSENT ORDER AGAINST
NISHAD SINGH

## I.      INTRODUCTION

On February 28, 2023, Plaintiff Commodity Futures Trading Commission (the "Commission" or "CFTC") filed a Complaint against Nishad Singh ("Singh" or "Defendant") seeking injunctive and other equitable relief, as well as the imposition of civil penalties, for violations of the Commodity Exchange Act ("Act"), 7 U.S.C. §§ 1–26 and the Commission's Regulations ("Regulations") promulgated thereunder, 17 C.F.R. pts. 1–190 (2022). The Court entered a Consent Order of Judgment As To Liability And Partial Injunctive Relief Against Nishad Singh (ECF No. 17) ("Initial Consent Order") on April 13, 2023, which, *inter alia*, reserved the determination of further appropriate relief, including restitution, disgorgement and a civil monetary penalty. (Initial Consent Order at ¶ 23).

## II.      CONSENTS AND AGREEMENTS

To resolve the remaining issues of the amounts of restitution, disgorgement and civil monetary penalty (as provided in the Initial Consent Order), without any further judicial proceedings, Defendant:

1

1.	Consents to the entry of this Supplemental Consent Order Against Nishad Singh ("Supplemental Consent Order");

2.	Affirms that he has read and agreed to this Supplemental Consent Order voluntarily, and that no promise, other than as specifically contained herein, or threat, has been made by the CFTC or any member, officer, agent or representative thereof, or by any other person, to induce consent to this Supplemental Consent Order;

3.	Waives service of the summons and Complaint;

4.	Admits the jurisdiction of this Court over him and the subject matter of this action pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1;

5.	Admits the jurisdiction of the CFTC over the conduct and transactions at issue in this action pursuant to the Act;

6.	Admits that venue properly lies with this Court pursuant to Section 6c(e) of the Act, 7 U.S.C. § 13a-1(e);

7.	Waives:

    (a)	Any and all claims that he may possess under the Equal Access to Justice Act, 5 U.S.C. § 504 and 28 U.S.C. § 2412, and/or the rules promulgated by the Commission in conformity therewith, Part 148 of the Regulations, 17 C.F.R. pt. 148 (2025), relating to, or arising from, this action;

    (b)	Any and all claims that he may possess under the Small Business Regulatory Enforcement Fairness Act of 1996, Pub. L. No. 104-121, tit. II, §§ 201–253, 110 Stat. 847, 857–74, (codified as amended at 28 U.S.C. § 2412 and in scattered sections of 5 U.S.C. and 15 U.S.C.), relating to, or arising from, this action;

    (c)	Any claim of Double Jeopardy based upon the institution of this action or the entry in this action of any order imposing a civil monetary penalty or any other relief, including this Supplemental Consent Order; and

    (d)	Any and all rights of appeal from this Supplemental Consent Order;

8.    Consents to the continued jurisdiction of this Court over him for the purpose of enforcing the terms and conditions of the Initial Consent Order and Supplemental Consent Order and for any other purpose relevant to this action even if Defendant now or in the future resides outside the jurisdiction of this Court;

9.  Agrees that he will not oppose enforcement of this Supplemental Consent Order on the grounds, if any exists, that it fails to comply with Rule 65(d) of the Federal Rules of Civil Procedure and waives any objection based thereon;

10.    Agrees that neither he nor any of his agents or employees under his authority or control shall: (i) take any action or make any public statement denying, directly or indirectly, any allegation in the Complaint and/or this Supplemental Consent Order; (ii) take any action or make any public statement creating or tending to create the impression that the Complaint and/or this Supplemental Consent Order is without a factual basis; or (iii) permit any public statement to the effect that Defendant does not admit the allegations of the Complaint, or that this Supplemental Consent Order contains no admissions of the allegations; provided, however, that nothing in this provision shall affect his: (a) testimonial obligations, or (b) right to take legal positions in other proceedings to which the CFTC is not a party. Defendant further stipulates for purposes of exceptions to discharge set forth in Section 523 of the Bankruptcy Code, 11 U.S.C. § 523, that the allegations in the Complaint are true, and further, that any debt for restitution, disgorgement, prejudgment interests, civil monetary penalty or other amount ultimately ordered due by Defendant under any judgment, order, consent order, decree or settlement agreement entered in connection with this proceeding is a debt for violation by Defendant of federal commodities laws. Defendant shall comply with this agreement, and shall undertake all steps necessary to

3

ensure that all of his agents or employees under his authority or control understand and comply with this agreement;

11. Acknowledges that in *United States v. Singh et al.*, No. 22-CR-673 (LAK) (S.D.N.Y. 2023) (the "Criminal Action"), Defendant was charged with and pled guilty to six counts, including but not limited to conspiracy to commit commodities fraud, in violation of 18 U.S.C. Section 371, and 7 U.S.C. Sections 9(1) and 13(a)(5) and 17 C.F.R. Section 180.1, and in connection with that plea, admitted the facts set out in the transcript of his plea allocution, dated February 28, 2023, a copy of which is attached as Exhibit A to this Order, and those same facts are admitted as if set forth in this Order.  Notwithstanding the provisions of Paragraph 10 of the Initial or Supplemental Consent Orders, Defendant and agents acting under his authority may make statements consistent with: (i) the facts admitted during Defendant's plea allocution in the Criminal Action; (ii) Defendant's testimony presented in the Criminal Action (*see* ECF Nos. 366, 368); and (iii) and the Government's sentencing submission in the Criminal Action (ECF No. 526).

12. Agrees for purposes of the waiver of any and all rights under the Equal Access to Justice Act and the Small Business Regulatory Enforcement Fairness Act of 1996, specified in Paragraph 7, that the Commission is the prevailing party in this action; and

13.     Agrees that no provision of this Supplemental Consent Order shall in any way limit or impair the ability of any other person or entity to seek any legal or equitable remedy against Defendant in any other proceeding.

4

## III.    FINDINGS OF FACT AND CONCLUSIONS OF LAW

14.    The Findings of Fact and Conclusions of Law contained in the Initial Consent Order are incorporated herein by reference and given preclusive effect as provided in the Initial Consent Order.

## IV.    DISGORGEMENT

IT IS HEREBY ORDERED that Singh shall comply fully with the following terms, conditions, and obligations relating to the payment of restitution, disgorgement and civil monetary penalty:

15. **Disgorgement.**  Singh shall pay disgorgement in the amount of three million, seven-hundred thousand dollars ($3,700,000, the "Disgorgement Obligation"), representing the value of real estate purchased by Defendant in October 2022 using personal funds from his FTX account that he knew or recklessly disregarded the fact that they consisted, at least in part, of misappropriated FTX customer assets.  The Disgorgement Obligation is deemed satisfied by the entry of an order in the Criminal Action that requires Singh to pay a criminal forfeiture judgment equal to or greater than the Disgorgement Obligation.

16. Defendant acknowledges that the Commission is not seeking, and the Court is not imposing, restitution and/or a civil monetary penalty at this time, based upon: (i) Defendant's cooperation in a Commission investigation and related proceedings, including the parallel criminal action, *United States v. Singh*, Crim. No. 22-cr-673 (S.D.N.Y. 2023), and (ii) in consideration of the judgment entered in the parallel criminal action (ECF No. 531), in which Defendant was sentenced to time served and three years' supervised release, and was subject to, *inter alia*, a $11,020,000,000 forfeiture order, for which Defendant is jointly and severally liable, as reflected

5

in an Amended Consent Preliminary Order of Forfeiture and a Final Order of Forfeiture in the parallel criminal action (ECF Nos. 532, 579), and (iii) further subject to the following conditions:

    (a)    Continuing Cooperation with the Commission: Defendant shall continue to cooperate fully and expeditiously with the CFTC pursuant to the terms of his Cooperation Agreement with the Division of Enforcement, executed February 27, 2023 ("Cooperation Agreement"). As part of such cooperation and without limitation, Defendant agrees to prepare and appear for testimony, as requested by the Division's staff, in the CFTC's continuing litigation against Samuel Bankman-Fried, *CFTC v. Bankman-Fried*, 22-cv-10503-PKC (S.D.N.Y. filed Dec. 13, 2022).

    (b)    If at any time following the entry of this Supplemental Consent Order, the Commission obtains information indicating that Defendant: (i) knowingly provided materially false or misleading information or materials to the Commission in the investigation, this proceeding or in a related proceeding; or (ii) violated the terms of his Cooperation Agreement—including his commitment to continue to cooperate—the Commission may, at its sole discretion and without prior notice to Defendant, move this Court to reopen this case and seek further relief or remedies, including an order directing that Defendant pay restitution and/or civil monetary penalties.

17.    Defendant agrees that in connection with any Commission motion seeking further relief or remedies including but not limited to restitution and/or civil monetary penalty, and at any hearing held on such a motion, Defendant may contest by way of defense whether he knowingly provided materially false and misleading information or violated the terms of his

Cooperation Agreement with the Division of Enforcement; however: (a) Defendant will be precluded from arguing that he did not violate the federal laws as alleged in the Complaint; (b) Defendant may not challenge the validity of the consents and agreements herein, or the validity of the Initial Consent Order or Supplemental Consent Order; (c) solely for the purposes of such motion, the allegations of the Complaint and the Findings of Fact and Conclusions of Law in the Initial Consent Order shall be accepted as and deemed true by the Court; (d) Defendant will be precluded from any defense to liability or remedy, including but not limited to, any statute of limitations defense; and (e) the Court may determine the issues raised in the motion on the basis of affidavits, declarations, excerpts of sworn deposition or investigative testimony, witness testimony, and/or documentary evidence, without regard to the standards for summary judgment contained in Rule 56(c) of the Federal Rules of Civil Procedure.

## V.   INJUNCTION

18.   Paragraph 22 of the Initial Consent Order is hereby superseded and replaced with the following provisions:

Defendant is also restrained, enjoined and prohibited, for a period of five years from the date of entry of the Initial Consent Order from directly or indirectly:

a. trading on or subject to the rules of any registered entity (as that term is defined in Section la of the Act, 7 U.S.C. § la(40));

b. entering into any transactions involving "commodity interests" (as that term is defined in Commission Regulation 1.3, 17 C.F.R. § 1.3 (2022)), for Defendant's own accounts or for any account in which they have a direct or indirect interest;

c. having any commodity interests, as that term is described herein, traded on Defendants' behalf;

7

d. controlling or directing the trading for or on behalf of any other person or entity, whether by power of attorney or otherwise, in any account involving commodity interests, as that term is described herein, and/or digital asset commodities; and

e. soliciting, receiving, or accepting any funds or assets from any person for the purpose of purchasing or selling any commodity interests, as that term is described herein, and/or digital asset commodities.

Defendant is also restrained, enjoined and prohibited, for a period of eight years from the date of entry of the Initial Consent Order from directly or indirectly:

f. applying for registration or claiming exemption from registration with the Commission in any capacity, and engaging in any activity requiring such registration or exemption from registration with the Commission, except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2022); and

g. acting as a principal (as that term is defined in Commission Regulation 3.1(a), 17 C.F.R. § 3.1(a) (2022)), agent or any other officer or employee of any person registered, exempted from registration or required to be registered with the Commission except as provided for in Regulation 4.14(a)(9).

## VI.   MISCELLANEOUS PROVISIONS

19. The injunctive and equitable relief provisions of this Supplemental Consent Order shall be binding upon the following persons who receive actual notice of this Supplemental Consent Order, by personal service or otherwise: (1) Defendant; (2) any officer, agent, servant, employee, or attorney of the Defendant; and (3) any other persons who are in active concert or participation with any persons described in subsections (1) and (2) above.

20. Entire Agreement and Amendments:  This Supplemental Consent Order incorporates all of the terms and conditions of the settlement among the parties hereto to date.  Nothing shall serve to amend or modify this Supplemental Consent Order in any respect whatsoever, unless:  (a) reduced to writing; (b) signed by all parties hereto; and (c) approved by order of this Court.

21. Invalidation:  If any provision of this Supplemental Consent Order or if the application of any provision or circumstance is held invalid, then the remainder of this Supplemental Consent Order and the application of the provision to any other person or circumstance shall not be affected by the holding.

22. Waiver:  The failure of any party to this Supplemental Consent Order or of any customer at any time to require performance of any provision of this Supplemental Consent Order shall in no manner affect the right of the party or customer at a later time to enforce the same or any other provision of this Supplemental Consent Order.  No waiver in one or more instances of the breach of any provision contained in this Supplemental Consent Order shall be deemed to be or construed as a further or continuing waiver of such breach or waiver of the breach of any other provision of this Supplemental Consent Order.

23. Continuing Jurisdiction of this Court:  This Court shall retain jurisdiction of this action to ensure compliance with this Supplemental Consent Order and for all other purposes related to this action, including any motion by Defendant to modify or for relief from the terms of this Supplemental Consent Order.

24. This Supplemental Consent Order may be executed in two or more counterparts, all of which shall be considered one and the same agreement and shall become effective when one or more counterparts have been signed by each of the parties hereto and delivered (by facsimile,

e-mail, or otherwise) to the other party, it being understood that all parties need not sign the same counterpart. Any counterpart or other signature to this Supplemental Consent Order that is delivered by any means shall be deemed for all purposes as constituting good and valid execution and delivery by such party of this Supplemental Consent Order.

25. Defendant understands that the terms of the Supplemental Consent Order, except with respect to disgorgement, are enforceable through contempt proceedings, and that, in any such proceedings he may not challenge the validity of this Supplemental Consent Order.

26. Defendant shall comply with all of the undertakings and agreements set forth in this Supplemental Consent Order.

There being no just reason for delay, the Clerk of the Court is hereby directed to enter this *Supplemental Consent Order Against Nishad Singh,* and close the case.

**IT IS SO ORDERED** on this 30th day of March, 2026.

_____
**UNITED STATES DISTRICT JUDGE**

10

CONSENTED TO AND APPROVED BY:

_Nishad Singh_ (signature)

**Nishad Singh**

Date: 02/25/26


Approved as to form:

(signature)

**Attorneys for Singh**

Russell Capone
Andrew Goldstein
Cooley LLP
55 Hudson Yards
New York, NY 10001-2157
(212) 479 6580 office
(212) 479 6275 (fax)
*rcapone@cooley.com*
*agoldstein@cooley.com*

(signature)

Benjamin J. Rankin, Trial Attorney
Patryk J. Chudy, Associate Director
Lenel Hickson, Jr., Investigative Counsel

**COMMODITY FUTURES TRADING
COMMISSION**
Division of Enforcement
Ted Weiss Federal Office Building
290 Broadway, Suite 600
New York, NY 10007
646-746-9700
*brankin@cftc.gov*
*pchudy@cftc.gov*
*lhickson@cftc.gov*


Date: 3-27-26

Case 1:23-cv-01684-PKC    Document 37    Filed 03/30/26    Page 12 of 51

# Exhibit A

N2SZZSINP-DC

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

          v.                     22 Cr. 673 (LAK)

NISHAD SINGH,

                                    Plea
            Defendant.

------------------------------x

                               New York, N.Y.
                               February 28, 2023
                               11:20 a.m.

Before:

                 HON. LEWIS A. KAPLAN,

                               District Judge

                     APPEARANCES

DAMIAN WILLIAMS
    United States Attorney for the
    Southern District of New York
DANIELLE SASSOON
NICOLAS ROOS
ANDREW ROHRBACH
SAMUEL RAYMOND
    Assistant United States Attorneys

COOLEY LLP
    Attorneys for Defendant
BY:  ANDREW GOLDSTEIN
    RUSSELL CAPONE

Also Present:

KRISTIN ALLAIN, FBI
LUKE BOOTH, FBI

             SOUTHERN DISTRICT REPORTERS, P.C.
                 (212) 805-0300

N2SZZSINP-DC

(Case called; appearances noted)

THE COURT:  Good morning.  I understand that your client wishes to waive indictment and enter a plea; is that right?

MR. GOLDSTEIN:  That's correct, Judge Kaplan.

THE COURT:  Okay.  Andy, please swear the defendant.

(Defendant sworn)

THE COURT:  Mr. Singh, I understand you want to enter a plea of guilty; is that correct?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  Before I accept your plea, I'm going to ask you some questions to establish to my satisfaction that you are pleading guilty because you are guilty and not for some other reason.  If you don't understand anything I ask or you have a desire, at any point, to talk to your attorney, just let me know, and we will take care of whatever the problem is.  All right?

THE DEFENDANT:  Understood.

THE COURT:  OK.  I take it you were born in the United States, and that English is your first language; is that right?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  OK.  Do you understand that you are now under oath, and that if you answer any of my questions falsely, your answers later could be used against you in a further prosecution for perjury or making a false statement?

Case 1:22-cv-00684-PKC    Document 102    Filed 03/30/23    Page 13 of 39

3

N2SZZSINP-DC

THE DEFENDANT:  Yes.

THE COURT:  How old are you?

THE DEFENDANT:  Old, you said?

THE COURT:  Yes.

THE DEFENDANT:  27 years old.

THE COURT:  How far did you go in school?

THE DEFENDANT:  I got a bachelor's degree.

THE COURT:  Are you under the care of a doctor or a mental health professional at this point?

THE DEFENDANT:  Yes.

THE COURT:  Let me narrow it then.

Are you under the care of a mental health professional?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  And what sort of a mental health professional?

THE DEFENDANT:  A psychiatrist.

THE COURT:  And for what malady?

THE DEFENDANT:  Anxiety and depression.

THE COURT:  All right.  Have you been hospitalized in the past for mental illness?

THE DEFENDANT:  No.

THE COURT:  Have you had any medicine, pills, narcotics, or alcohol in the last 24 hours?

THE DEFENDANT:  I've had anxiety and depression

N2SZZSINP-DC

medication.

THE COURT:  And what have you had in the last 24 hours?

THE DEFENDANT:  Clonopin and Lexapro for anxiety and depression.

THE COURT:  And do either of those drugs or the combination of those drugs interfere with your ability to engage in rational thought?

THE DEFENDANT:  No, they do not.

THE COURT:  Is your mind clear this morning?

THE DEFENDANT:  Yes.

THE COURT:  Do either counsel have any doubt as to the defendant's competence to plead.

Ms. Sassoon?

MS. SASSOON:  Government does not, your Honor.

THE COURT:  Sir?

MR. GOLDSTEIN:  We do not, your Honor.

THE COURT:  On the basis of Mr. Singh's responses to my questions, I find that he is fully capable to enter an informed plea.

Now, Mr. Singh, do you understand that you are entitled under the constitution to be charged with a federal crime of this nature only on the basis of an indictment returned by a grand jury, but that you waived that right and agreed to be charged on the basis only of an information signed

N2SZZSINP-DC

by the United States Attorney?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  You should find before you a document marked as Court Exhibit A, which I understand to be the waiver of indictment.

Did you sign that document?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  Did you read it before you signed it?

THE DEFENDANT:  Yes.

THE COURT:  Did you discuss its implications fully with your attorneys?

THE DEFENDANT:  Yes.

THE COURT:  Did you knowingly and voluntarily waive your right to be prosecuted only on the basis of a grand jury inditement?

THE DEFENDANT:  Yes.

THE COURT:  Have you had an adequate opportunity to discuss the case with your lawyers?

THE DEFENDANT:  Yes.

THE COURT:  And are you satisfied with your lawyers and their representation of you?

THE DEFENDANT:  Yes.

THE COURT:  I'm now going to describe your rights under the constitution and laws.  Please listen carefully, I'm going to ask at the end whether you understood everything I

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

said.

You're entitled to a speedy and public trial by jury on the charges contained in the information against you. If there were a trial, you would be presumed innocent and the government would be obliged to prove you guilty by competent evidence and beyond a reasonable doubt before you could be found guilty. You would not have to prove that you're innocent. You would be entitled to be represented by a lawyer at every stage of your case. If you couldn't afford a lawyer, a lawyer would be provided for you at public expense. The government would have to bring its witnesses into court to testify in your presence. Your lawyer could cross examine the government's witnesses. Your lawyer could object to evidence offered by the government, and your lawyer also could offer evidence in your defense. You would have the right to the issuance of subpoenas, which are a form of compulsory process issued by the Court to compel the attendance of witnesses to testify in your defense. You would have the right to testify, if you chose to do so. You would also have the right not to testify. And if you elected not to testify no inference of guilt could be drawn from that fact.

You have the right to enter a plea of not guilty even now. But if you plead guilty, and I accept the plea, there will be no further trial of any kind. You will waive your right to a trial and all the other rights that I just

Case 1:22-cv-00684-PKC    Document 102    Filed 03/30/23    Page 19 of 51

N2SZZSINP-DC

mentioned.  I'll enter a judgment of guilty and sentence you on the basis of your guilty plea after I consider a presentence report.

You'll also have to waive your right not to incriminate yourself because I'm going to ask you questions about what you did in order to satisfy myself that you are guilty as charged.

Do you understand what I said so far?

THE DEFENDANT:  Yes, your Honor, I understand.

THE COURT:  Have you received a copy of the information that contains the written charges against you?

THE DEFENDANT:  Yes.

THE COURT:  Have you discussed it fully with your attorneys?

THE DEFENDANT:  Yes.

THE COURT:  Have you discussed the charges in the information to which you intend to plead guilty with your counsel?

THE DEFENDANT:  Yes.

THE COURT:  Do you understand that you are charged in Count One of the information with conspiracy to commit wire fraud on customers of FTX in violation of 18 U.S. Code 1349.

Do you understand that's the charge in Count One?

THE DEFENDANT:  Yes.

THE COURT:  Ms. Sassoon, please state the elements of

the charge.

MS. SASSOON:  Yes, your Honor.

Count One charges the defendant with conspiracy to commit wire fraud, as you noted, in violation of 18 U.S.C. Section 1349.  There are two elements:

First, the existence of the conspiracy to commit wire fraud;

And, second, that the defendant knowingly and willfully became a member of and joined in the conspiracy.

The crime of wire fraud, which is both the object of Count One and the offense charged in Count Two, which is substantive wire fraud under 18 U.S.C. Section 1343, has three elements, which I can describe now.

THE COURT:  Please.

MS. SASSOON:  First, there is a scheme or artifice to defraud or to obtain money or property by materially false and fraudulent pretenses, representations or promises;

Second, that the defendant knowingly participated in the scheme or artifice to defraud with knowledge of its fraudulent nature and with specific intent to defraud, or that he knowingly and intentionally aided and abetted others in the scheme.

And, third, that the execution of that scheme the defendant used or caused the use of interstate or international wires.  "Wires" referring to the use of telephone, text

N2SZZSINP-DC

message, emails and also refers to wire transfer of funds.

With respect to that count and all others in the information, if the case proceeded to trial, the government would also have to prove venue by a preponderance of the evidence. Although, any defense based on venue is based in the plea agreement here.

THE COURT: Thank you.

Mr. Singh, do you understand that in order to convict you on Count One, the government would have to prove the two elements that Ms. Sassoon described to you beyond a reasonable doubt, and but for your waiver of venue would have had to prove the propriety of that count being brought in this court by a preponderance of the evidence.

Do you understand those elements?

THE DEFENDANT: I understand.

THE COURT: And do you understand the government's burden of proof, as I just described it to you, with respect to those elements?

THE DEFENDANT: Yes, your Honor.

THE COURT: Do you understand that the maximum possible penalty for Count One is 20 years' imprisonment. The greater of a fine of $250,000, or twice the gross gain, or twice the gross loss, plus an order of restitution, a mandatory special assessment of $100, a term of supervised release of three years. And if you were released on supervised release,

N2SZZSINP-DC

and found to have violated the terms thereof, you could be sentenced to an additional prison term of two years without credit for any time served on release.

Do you understand that?

THE DEFENDANT:  I understand.

THE COURT:  Ms. Sassoon, I accurately stated the consequences of a violation of supervised release, did I?

MS. SASSOON:  Yes, your Honor.

THE COURT:  Thank you.

Now, do you understand that you are charged in Count Two of the information with the substantive crime of wire fraud on customers of FTX and aiding and abetting the same in violation of 18 U.S. Code 1343 and 2.  And I point out this is the substantive crime of wire fraud as opposed to a conspiracy to commit wire fraud; that is the subject of Count One.

Do you understand that's the charge in Count Two?

THE DEFENDANT:  Yes.

THE COURT:  Ms. Sassoon already stated the three elements of the substantive crime of wire fraud.

Do you understand the elements of that charge as stated a moment ago by the government?

THE DEFENDANT:  I do.

THE COURT:  And once again, as on all of the counts of this indictment, do you understand that to convict you on Count Two, the government would have to prove those three

N2SZZSINP-DC

elements beyond a reasonable doubt?

THE DEFENDANT:  Yes.

THE COURT:  And do you understand that the maximum possible penalty for the substantive crime of wire fraud is exactly the same as that on Count One?

THE DEFENDANT:  Yes, your Honor, I understand.

THE COURT:  Do you understand that you are charged in Count Three with conspiracy to commit commodities fraud?

THE DEFENDANT:  Yes.

THE COURT:  At this time, I'll ask Ms. Sassoon to state the elements of conspiracy to commit wire fraud.

MS. SASSOON:  Thank you, your Honor.  And I appreciate this has been broken up because it's a lot of elements.

THE COURT:  Yes.

MS. SASSOON:  So Count Three charges the defendant with participating in an illegal conspiracy in violation of 18 U.S.C. Section 371.  And I'll note that Counts Four and Six likewise charge conspiracies under that statute, although with different objects.  Conspiracy under the offense clause 371 has three elements:

First, that two or more persons entered the unlawful agreement charged in the specific count of the information;

Second, that the defendant knowingly and willfully became a member of that alleged conspiracy;

And, third, that one of the members of the conspiracy

Case 1:23-cv-01684-PKC   Document 132   Filed 03/30/26   Page 24 of 39     12

N2SZZSINP-DC

knowingly committed at least one overt act in furtherance of the conspiracy.

The object of the conspiracy charged in Count Three, as your Honor noted, is commodities fraud. In violation of Title 7, United States Code, Sections 9, 1, and 13(a)(5) and Title 17 CFR section 180.1.

There are three elements to this crime:

First, in connection with any swap or contract of sale of any commodity or interstate commerce or contract for future delivery to on or subject the rules of any registered entity.

And, second, the defendant or any of his coconspirators did anyone or more of the following:

A, employed or attempted to use or employ a manipulative, device, scheme or artifice to defraud.

B, made or attempted to make an untrue or misleading statement of a material fact or omitted to state a material fact necessary to make the statements made not untrue or misleading;

Or C, engaged or attempted to engage in an act, practice, or course of business that operated or would operate as a fraud or deceit upon any person;

And, third, that the defendant acted knowingly, willfully and with the intent to defraud.

THE COURT: Thank you.

Do you understand, Mr. Singh, the elements of the

Case 1:23-cv-01684-PKC    Document 132    Filed 03/30/26    Page 25 of 59        13

N2SZZSINP-DC

charge of conspiracy to commit commodities fraud as distinguished from the substantive offense of commodities fraud?

THE DEFENDANT:  I do.

THE COURT:  And do you understand that to convict you on this charge, the government would have to prove the elements of conspiracy to commit wire fraud beyond a reasonable doubt?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  Do you understand that the maximum possible penalty in the event of conviction on Count Three would be five years' imprisonment, plus a fine, restitution, a mandatory special assessment, and a term of supervised release, all identical to those on Count One?

THE DEFENDANT:  Yes.

THE COURT:  Do you understand that you are charged in Count Four of the information with conspiracy to commit securities fraud?

THE DEFENDANT:  Yes.

THE COURT:  I'll ask Ms. Sassoon to state the elements of that crime.

MS. SASSOON:  Yes.  So I already noted the elements of a conspiracy under Section 371.  So I'll now turn to the object of the conspiracy charge in Count Four, which is securities fraud in violation of Title 15, United States Code, Section 78j(b) and 78ff, and Title 17 CFR, Section 240.10b-5.  There

Case 1:23-cv-01634-PKC    Document 32    Filed 03/30/23    Page 26 of 39    14

N2SZZSINP-DC

are three elements of securities fraud:

First, is that in connection with the purchase or sale of securities, the defendant either employed a device, scheme, or artifice to defraud, or made an untrue statement of a material fact or omitted to state a material fact which made what was said under the circumstances misleading, or engaged in an act, practice, or course of business that operated or would operate as a fraud or deceit upon a purchaser or seller;

Second, that the defendant acted knowingly, willfully, and with intent to defraud.

And, third, that the defendant knowingly used or caused to be used any means or instruments of transportation or communication in interstate commerce or the use of the mails in furtherance of the fraudulent conduct.

THE COURT:  Thank you.

Mr. Singh, do you understand the elements of the charge of conspiracy to commit wire fraud?

THE DEFENDANT:  Yes, I do.

THE COURT:  And do you understand that to convict you on that count, the government would have to prove each of those elements beyond a reasonable doubt?

THE DEFENDANT:  Yes.

THE COURT:  Do you understand that the maximum possible penalty in the event of conviction on Count Four is exactly the same as on Count Three?

Case 1:23-cv-01684-PKC    Document 32    Filed 03/30/26    Page 25 of 33

15

N2SZZSINP-DC

THE DEFENDANT:  Yes, I do.

THE COURT:  Do you understand that you are charged in Count Five with conspiracy to commit money laundering?

THE DEFENDANT:  Yes.

THE COURT:  Ms. Sassoon?

MS. SASSOON:  Count Five charges the defendant, as your Honor noted, with conspiracy to commit money laundering in violation of 18 U.S.C. Section 1956(h) money laundering conspiracy are:

First, that two or more people entered into an unlawful agreement to commit money laundering;

And, second, that the defendant knowingly and willfully entered into the agreement.

Count Five charges that there were two objects of the conspiracy:

One, concealment of money laundering;

And, two, spending money laundering;

For the first object, concealment money laundering, there are three elements:

First, that the defendant conducted or attempted to conduct a financial transaction which must, in some way or degree, have affected interstate or foreign commerce;

Second, that the financial transaction at issue involved the proceeds of specified unlawful activity, which here is the proceeds of the wire fraud scheme charged in Count

Case 1:23-cv-01684-PKC   Document 32   Filed 03/30/26   Page 28 of 33   16

N2SZZSINP-DC

Two;

Third, that the defendant knew that the financial transaction involved the proceeds of some form of unlawful activity, and that the defendant knew that the transaction was designed in or in part either to disguise the nature and location, source, ownership, or control of the proceeds of the unlawful activity.  So I think that's actually four elements, your Honor.

The second object of Count Five is engaging in a monetary transaction of over $10,000 in property derived from specified unlawful activity.  The elements of this object are:

First, that the defendant engaged in a monetary transaction in or affecting interstate commerce;

Second, that the monetary transaction involved criminally derived profit of a value greater than $10,000.

And, third, that the property was derived from specified unlawful activity; again, here, wire fraud proceeds from the scheme alleged in Count Two.

Finally, that the defendant acted knowing that the transaction involved proceeds of the criminal offense, and that the transaction took place in the United States.

THE COURT:  Thank you.

Did you understand, Mr. Singh, the elements of this charge as stated by the government?

THE DEFENDANT:  Yes, your Honor.

THE COURT: Do you understand that to convict you on this charge, the government would have to prove each of those elements beyond a reasonable doubt? Subject to this caveat, to the extent that there is a charge of conspiracy, the government would have to prove beyond a reasonable doubt only one of the alleged objects of the conspiracy rather than all.

Do you understand that?

THE DEFENDANT: Yes.

THE COURT: Do you understand that the maximum possible penalty of this crime is the same as on Count One?

THE DEFENDANT: Yes.

THE COURT: Do you understand that you are charged in Count Six with conspiracy to defraud the United States and willfully violate the Federal Election Campaign Act?

THE DEFENDANT: Yes.

THE COURT: Ms. Sassoon?

MS. SASSOON: Yes. Thank you, your Honor.

And I believe just with respect to Count Five the fine provision is slightly different than for the other charge as noted in the plea agreement.

THE COURT: OK. Please enlighten us.

MS. SASSOON: A maximum fine pursuant to 18 U.S.C. Section 1956(a)(1)(B), the greatest of $500,000, or twice the value of the property involved in the transaction.

THE COURT: Thank you. I stand corrected.

Case 1:23-cv-01684-PKC   Document 32   Filed 03/30/26   Page 38 of 59     18

N2SZZSINP-DC

Mr. Singh, did you understand that what was just said?

THE DEFENDANT:  I understand.

THE COURT:  All right.

MS. SASSOON:  Turning now to Count Six of the information, it charges the defendant with another conspiracy under 18 U.S.C. Section 371, whose elements I previously delineated.  The object of this conspiracy is conspiring to violate the Federal Election Campaign Act and to defraud the Federal Election Commission.  So I'll walk through those objects now.

The first object is the object of making a political contribution in the name of another person in violation of Section 30122 of Title 15 of the United States Code.  The elements of that offense are:

One, making one or more contributions;

Two, in the name or names of one or more persons other than the true source of the funds.

Three, with the aggregate amount of such contribution being $25,000 or more in a calendar year;

And, four, doing so knowingly and willfully.

The second object of the conspiracy is making a political contribution from a corporation.  Under the federal election laws, corporations are prohibited from making direct contributions to political candidates.  It is unlawful for any corporation to make such a contribution in violation of

N2SZZSINP-DC

Section 30118 of Title 15 of the United States Code. The elements of this object are:

One, making one or more contributions to candidates.

Two, via corporation.

Three, with the aggregate amount of such contribution being $25,000 or more in a calendar year.

And, four, that it was done knowingly and willfully.

The final object is a conspiracy to defraud the Federal Election Commission. The elements are 12 or more persons agreed to impair, impede, obstruct or defeat by fraudulent or dishonest means the lawful, regulatory and/or enforcement function of an agency.

And, two, the defendant knowingly became a member of that conspiracy.

And, three, an overt act in furtherance of that conspiracy was committed.

THE COURT: Thank you.

Mr. Singh, do you understand the elements of the charges just stated by the government?

THE DEFENDANT: I do.

THE COURT: Do you understand that to convict you on this count, the government would have to prove each of those essential elements beyond a reasonable doubt, but subject also to the same qualification I indicated to you with respect to the previous count, namely, that they need to prove only one of

the several alleged objects of the alleged conspiracy?

THE DEFENDANT:  Yes, understood.

THE COURT:  Do you understand that the maximum possible penalty for Count Six is the same as on Count Three?

THE DEFENDANT:  Yes, understood.

THE COURT:  Do you understand that you will be sentenced on each of these six counts?

THE DEFENDANT:  Yes.

THE COURT:  Do you understand that the sentences could be imposed either concurrently or consecutively, and that if you were sentenced to the statutory maximum on each of the six counts, the term of imprisonment would be the total of the terms imposed on each of the six counts?

THE DEFENDANT:  Yes, I understand.

THE COURT:  So that if the sentences were imposed consecutively and the sentences were the maximum term of imprisonment, you could actually be imprisoned under a sentence calling for 75 years in jail?

THE DEFENDANT:  I understand.

THE COURT:  Do you understand that if you enter a plea of guilty, you've agreed to forfeit to the United States any money or property you received or gained as a result of the offenses charged in the indictment or that were used to commit the offenses?

THE DEFENDANT:  Yes, I understand.

Case 1:23-cv-01684-PKC   Document 182   Filed 03/30/26   Page 33 of 59

21

N2SZZSINP-DC

THE COURT:  The forfeiture order has been signed, has it?

MS. SASSOON:  Yes, your Honor.

THE COURT:  All right.  Andy, do we have that marked?

THE DEPUTY CLERK:  I did not mark it.

THE COURT:  You did not mark it?

THE DEPUTY CLERK:  I believe it's up there.

THE COURT:  Let's mark one of them as Court Exhibit C.

THE DEPUTY CLERK:  Should this go before the defendant?

THE COURT:  Yes, please.

Mr. Singh, the clerk has placed before you a document marked Court Exhibit C.

Is that your signature on the last page?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  Did you read it before you signed it?

THE DEFENDANT:  Yes.

THE COURT:  Did you have the advice of counsel before you signed it?

THE DEFENDANT:  Yes.

THE COURT:  And are you satisfied with the advice you received from your counsel?

THE DEFENDANT:  Yes.

THE COURT:  And did you sign it voluntarily and knowingly?

Case 1:23-cv-01684-PKC   Document 32   Filed 03/30/26   Page 34 of 51   22

N2SZZSINP-DC

THE DEFENDANT:  I did.

THE COURT:  Do you know its terms?

THE DEFENDANT:  Yes.

THE COURT:  Ms. Sassoon, do you have any need to go any farther with that?

MS. SASSOON:  No.  Thank you, your Honor.

THE COURT:  OK.  I'm now going to describe the sentencing process, Mr. Singh.  I'm sure that Mr. Capone and Mr. Goldstein have done that already, but it's my job to do it as well.

The law requires that you be sentenced in accord with the Sentencing Reform Act and that I take into account the United States Sentencing Guidelines.  The sentencing guides, in turn, require that I take into account the actual conduct in which you've engaged, which may be more extensive than what's charged in the information, that I consider the victim or victims of your offense, if there were any, the role that you played, whether you engaged in any obstruction of justice, and whether you've accepted responsibility for your actions, and your criminal history, if you have one.  The guidelines provide for the computation of a range of a minimum and a maximum months of imprisonment.  You may be sentenced within that guideline range.  The Court must consider the guideline range and various other factors enumerated in the guidelines and in the Sentencing Reform Act as well as factors articulated in

N2SZZSINP-DC

Section 3553 of Title 18 of the U.S Code.  But the Court is not obliged to follow the sentencing guidelines.  The only thing you can be sure of about the sentence in your case is that I can't sentence you to something more severe than the statutory maximum that I just explained to you a few minutes ago.

Do you understand that?

THE DEFENDANT:  I understand, your Honor.

THE COURT:  The probation department will be preparing a written report setting forth the results of an investigation that will conduct into your background and into the offenses to which you are pleading guilty.  It's only after it does that that the probation office will state its view as to what they think the applicable sentencing guideline range should be.  The Court isn't bound by the probation department's view either.

Now, I understand you entered into a plea agreement. And we're going to discuss that in a little more detail in a minute.

Do you have it in front of you?  It's marked as Court Exhibit B?

THE DEFENDANT:  Oh, I do have it in front of me.

THE COURT:  And does it bear your signature?

THE DEFENDANT:  Yes, it does, your Honor.

THE COURT:  And did you read it carefully before you signed it?

THE DEFENDANT:  Yes.

N2SZZSINP-DC

THE COURT:  Did you discuss it fully with your attorneys before you signed it?

THE DEFENDANT:  I did.

THE COURT:  Do you have any unanswered questions about it?

THE DEFENDANT:  I do not.

THE COURT:  For all the reasons I just articulated to you, it's impossible to say for certain what your guideline range will be or what sentence will be imposed.  If anyone has tried to predict either one of those things to you, whatever prediction you heard may be wrong.  Whoever made the prediction may not have all the information that the Court will have when you are sentenced.  The only thing, just to repeat, that you can be sure of is that the sentence can't be more than the statutory maximum.

I know you stated earlier that you were a born in the United States and therefore are a citizen.  I'm obliged it advise you that if you are not a U.S. citizen, a finding that you are guilty of a felony may have a negative impact on your immigration status and any application you may have in the future for permission to remain in the United States or become a citizen.  You may be subject to an order of deportation or removal as a result of this guilty plea if are you not a U.S. citizen.

Do you understand that?

Case 1:23-cv-01684-PKC   Document 32   Filed 03/30/26   Page 25 of 39

N2SZZSINP-DC

THE DEFENDANT:  Yes, your Honor.  I understand.

THE COURT:  OK.  It's important that you understand also that you won't be able to withdraw your guilty plea on the ground that any prediction you may have heard about the guideline range or the sentence turns out to be incorrect.

Do you understand that?

THE DEFENDANT:  I understand.

THE COURT:  Do you understand anything -- everything I said?

THE DEFENDANT:  Yes.

THE COURT:  Maybe I should ask whether you understood anything I said.

THE DEFENDANT:  Yes, to both.

THE COURT:  But I have no doubt in your case that you understood every word of it.

Has anyone offered you any inducements or threatened you or anyone else or forced you in way to plead guilty?

THE DEFENDANT:  No.

THE COURT:  Now, we already talked about the plea agreement.  Has anyone made any promises to you other than what whatever is set forth in that document that induced you to plead guilty?

THE DEFENDANT:  No, your Honor.

THE COURT:  Has anyone made any promises or assurances to you as to what your sentence will be?

N2SZZSINP-DC

THE DEFENDANT:  No, your Honor.

THE COURT:  OK.  Now, there are a couple of other technicalities that need to be complied with.  Before we go on to the next part of this proceeding, I direct the prosecution, once again, to comply with its obligations under *Brady v. Maryland* and its progeny to disclose to the defense all information, whether admissible or not, that is favorable to the defendant, material either to guilt or to punishment and known to the prosecution.  Possible consequences of noncompliance may include dismissal of individual charges, or the entire case, exclusion of evidence, and professional discipline, or court sanctions on the attorneys responsible.  I will be preparing another written order, once again, describing all of this and the possible consequences of failing to meet it.  And, once again, I direct the prosecution to review and comply with that order.

Does the prosecution, again, confirm that it understands its obligations and will comply with them?

MS. SASSOON:  Yes, your Honor.  The government understood its obligation.

I would just note on the bottom of page 5 into page 6 of the agreement is a paragraph of about the defendant choosing not to request discovery material and understanding that if he had not entered a plea of the guilty, the government would be required to produce Rule 16 material and further be required to

produce material pursuant to *Brady* and Rule 5(f) and, if the defendant proceeded to trial, impeachment material under *Giglio*.

THE COURT:  Do you understand what counsel just read to you?

THE DEFENDANT:  Yes, I understand.

THE COURT:  Thank you.  And you understood it when you signed the plea agreement?

THE DEFENDANT:  Yes, I did.

THE COURT:  OK.  Now, we need to go through the charges.

Did you, as charged in Count One of the information, conspire with one or more other persons to commit wire fraud on customers of FTX?

THE DEFENDANT:  Yes.

THE COURT:  Please tell me, in your own words, what you did, that in your mind, makes you guilty of that offense.

MR. GOLDSTEIN:  Your Honor, Mr. Singh prepared an allocution that groups the facts of Counts One through Four together and then Counts Five and Six together.  Could he proceed in that way?

THE COURT:  We could do it that way.  Just let me cover the other three counts.

Did you, as charged in Count Two of the information, commit the substantive crime of wire fraud on customers of FTX

N2SZZSINP-DC

or aid and abet in doing so?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  Did, you as charged in Count Three of the information, conspire to commit commodities fraud?

THE DEFENDANT:  Yes.

THE COURT:  Did you, as charged in Count Four of the information, conspire to commit securities fraud?

THE DEFENDANT:  Yes.

THE COURT:  All right.  Now, tell me what you did that, in your mind, makes you guilty of all four offenses those charged in Counts One through Four.

THE DEFENDANT:  In 2017, I began working at Alameda Research as an engineer.  In 2019, at the request of Sam Bankman-Fried and Gary Wang, I moved from Alameda to FTX and similarly began working as an engineer.  Eventually, I became the head of engineering at FTX, where I was responsible for coding, other aspects of FTX's platform, and managing junior members of the engineering team.

By mid-2022, I understood that Alameda was borrowing funds from FTX that belonged to other customers.  I understood that customers were not aware of this, and had not consented to such borrowing.

In June of 2022, I participated in an effort to more precisely track the amount of customer money that Alameda had borrowed from FTX and confirmed that it was several billion

N2SZZSINP-DC

dollars' worth.

By early September 2022, I came to understand that Alameda could not repay what it owed. I knew that Sam Bankman-Fried then tried to raise additional funds from investors, and I understood that investors would not have been told the full truth about FTX's financial condition.

In addition, despite understanding at that point, that Alameda was in substantial debt to FTX customers, in my role as a member of the leadership team, I agreed to certain expenditures that originated with Alameda funds, and were, therefore effectively coming from FTX customer money. This involved electronic messages and other wire communications.

In addition, at Sam Bankman-Fried's direction, I took actions to make it appear that FTX's revenues were higher than what they were.

In 2022, I provided that misleading information to auditors. I understood that that information would be used by Sam Bankman-Fried and others in attempting to raise or in raising funds from investors.

I knew at that time that I participated in each of these events that my conduct was wrong.

THE COURT: All right. I have a couple of questions.

You said a few moments ago that in 2022 you came to understand that investors would not have been told various things in connection with the raising of additional capital.

N2SZZSINP-DC

Did I understand you correctly?

THE DEFENDANT:  That's correct.

THE COURT:  How did you come to understand that?

THE DEFENDANT:  I -- can I have one movement to --

(Defendant conferred with counsel)

THE COURT:  Please.

THE DEFENDANT:  Your Honor, I knew that Sam was attempting to raise from investors.  I knew that affirmatively. I had the strong belief that he would not share FTX's full financial condition with them.

THE COURT:  Well, how did you come to have that belief?

THE DEFENDANT:  From discussions with Sam.

THE COURT:  So is that something he told you?

THE DEFENDANT:  Not explicitly, your Honor.  But I understood it implicitly that he would not share FTX's full financial condition.

THE COURT:  All right.

And near the end of your prepared statement, you indicated and possibly you can read it, again, it must have been the last paragraph.

THE DEFENDANT:  Sure, your Honor.

At Sam Bankman-Fried's direction, I took actions to make it appear that FTX's revenues were higher than they were. In 2022, I provided that misleading information to auditors.  I

N2SZZSINP-DC

understood that the information would be used by Sam Bankman-Fried and others in raising or attempting to raise funds from investors.

THE COURT:  OK.  How did you come to have that understanding.

THE DEFENDANT:  I understood this information made its way into the financials like, the formal GAAP audited financials.  And that those were part of what was provided to prospective investors.

THE COURT:  And how did you know they were provided to investors?

THE DEFENDANT:  I think I had that general understanding from overhearing conversations at FTX about what information was provided to investors.

THE COURT:  Conversations with whom?

THE DEFENDANT:  With Sam Bankman-Fried and others.

THE COURT:  All right.  Is the allocution on those counts satisfactory to the government?

MS. SASSOON:  Yes, your Honor, if I may, I will provide a proffer on some jurisdictional --

THE COURT:  I was going to ask you that next.

MS. SASSOON:  There was mention of wire communications, but I just wanted to proffer that for Counts One and Two, which were the wire fraud counts, wires in the form of Slack communications, customer wire transfer deposits

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

N2SZZSINP-DC

and other bank wires went through the Southern District of New York in connection with these crimes. For Count Three, commodities fraud, the government would prove that FTX.com permitted trading of crypto derivates, such as future contracts, which would constitute commodities under the statute. And for Count Four, securities fraud, the government would prove that equity investors in FTX would receive stock, which constitute a security under the relevant statute.

THE COURT: Thank you.

Mr. Singh, do you agree with what Ms. Sassoon said?

THE DEFENDANT: I do.

THE COURT: OK. Now, let's go to Count Five.

THE DEFENDANT: This is the campaign finance charge.

THE COURT: Well, you're getting ahead of me. I'm sure you are a smart fellow, but let me get there first.

Did you, as charged in Count Five, conspire to commit money laundering?

THE DEFENDANT: Yes.

THE COURT: All right. What did you do that, in your mind makes you guilty of money laundering conspiracy?

MR. GOLDSTEIN: Just, again, your Honor, his allocution --

THE COURT: You want to take both counts together?

MR. GOLDSTEIN: Yes.

THE COURT: Did you, as charged in Count Six, conspire

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

N2SZZSINP-DC

to defraud the United States and willfully to violate the Federal Election Campaign Act?

THE DEFENDANT:  Yes.

THE COURT:  Please tell me, in your own words, what it is you did that, in your mind, makes you guilty of the crimes charged in Counts Five and Six.

THE DEFENDANT:  In 2022, I agreed with others at FTX and Alameda to make political donations in my name that were funded in part by transfers from Alameda.  Although I agreed politically with many of the donations, I did not select the candidates and the political action committees who received the donations.  And I understood that the donations were in part for the benefit of Sam Bankman-Fried and FTX and their ability to be politically influential.

I also understood that any reporting of the donations would conceal that the money came from Alameda.  And I knew at that time that Alameda money had to be coming, effectively, from FTX customer funds.

I knew that this misleading information about the campaign donations, that said that I made the donations, would be reported by the government.  And at the time I was not sure whether my conduct was unlawful because I wasn't familiar with the campaign finance rules, but I knew my conduct was wrong. And I chose not to ask questions that would have made it clear that facilitating these donations was unlawful.

N2SZZSINP-DC

THE COURT:  Did you understand that there was a substantial risk that what you did was prohibited by law?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  And did you consciously act to avoid learning whether, in fact, it violated the law or not?

THE DEFENDANT:  May I have one moment to discuss with counsel?

THE COURT:  Please.

(Defendant conferred with counsel)

THE DEFENDANT:  Yes, your Honor.

THE COURT:  Is the allocution satisfactory to the government?

MS. SASSOON:  Yes, your Honor.

And with respect to Count Five, the money laundering charge, the government would prove that wire transfers occurred within the Southern District of New York.

THE COURT:  Thank you.

Do you agree with what Ms. Sassoon just said?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  OK.  How do you now plead to the charges in Counts One through Six, guilty or not guilty?

THE DEFENDANT:  I plead guilty.

And, your Honor, I'm unbelievably sorry for my role in all of this and the harm that it's caused.  I'm hoping that in accepting responsibility, assisting the government, and

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

Case 1:23-cv-01684-PKC   Document 32   Filed 03/30/26   Page 46 of 59   35

N2SZZSINP-DC

forfeiting assets, I can begin to make it right.

THE COURT:  Thank you.

Are you pleading guilty because you, in fact, are guilty of those crimes.

THE DEFENDANT:  Yes, your Honor.

THE COURT:  OK.  You may be seated.

I will accept the plea of guilty.  A judgment of guilty will enter.  The defendant acknowledges that he is, in fact, guilty as charged in the information.  He knows that he has a right to a trial.  He knows what the maximum possible sentence is.  And he has an understanding of the applicable sentencing guidelines.  I find that the plea is voluntary and supported by an independent basis in fact containing each of the essential elements of the offense.

Now, Mr. Singh, as I told you, the probation department will prepare a presentence report to assist in sentencing you.  You're going to be interviewed by the probation officer who does that.  It's important that you be truthful and accurate with the probation officer.  The report may well be quite important in my decision as to what to sentence you to.  You and your lawyers will have the right to examine and comment on the report and to speak on your behalf before you are sentenced.

Any written submissions on behalf of the defendant must be submitted to chambers not later than three weeks before

N2SZZSINP-DC

the sentencing date.

Do we have a control date for sentencing?

MS. SASSOON: The parties would propose a date approximately 18 months from now.

THE COURT: Andy.

THE DEPUTY CLERK: Sure, Judge.

Judge, 18 months from now, how about November 13, 2024, Judge?

THE COURT: Sentencing is set for November 13, 2024, at 10:00 a.m.

Now, it's premature, I'm sure, to set a date for the submission of the prosecution case summary, yes?

MS. SASSOON: Yes, your Honor.

THE COURT: What do you propose? Do you want to say September of 2024?

MS. SASSOON: Yes, your Honor. Thank you.

THE COURT: The prosecution case summary will be submitted to probation no later than September 1st, 2024. And leave it to probation and the defense to work out an interview date, unless somebody has a better idea. Now --

MS. SASSOON: Yes, your Honor. And we have a trial date in this matter for Samuel Bankman-Fried, and after that trial date we can circle back with the Court about setting other deadlines related to Mr. Singh's sentencing.

THE COURT: Now, there's an application with respect

to the filing of redacted copies of the superseding information.  And the forfeiture preliminary order of forfeiture.

Any objection to any of that?  Have you all agreed on that?

MS. SASSOON:  Yes, your Honor.  And there's a related redaction to the plea agreement that I know doesn't get filed on the docket, but to the extent there is a public version made available to interested parties, we would redact identical language from the employment.

THE COURT:  Well, it's not the Court's practice to make them available.

MS. SASSOON:  I know that our office sometimes provides it given that it's a court exhibit.

THE COURT:  OK.

MS. SASSOON:  And I would just note that the redactions, we would provide unredacted copies in the course of executing the forfeiture.  So to the extent that we need to coordinate the forfeiture of shares and the like, we would provide the unredacted copy to parties that we would need to coordinate with for purposes of executing forfeiture.

THE COURT:  Mr. Capone, anything on that?

MR. GOLDSTEIN:  Mr. Goldstein.  No, your Honor, no objection.

THE COURT:  Oh, excuse me.  I should know better.

N2SZZSINP-DC

OK.  Now, let's take a bail.  Who's going to handle that for the government?

MS. SASSOON:  The government has a proposed bail package for your Honor's consideration set forth in the plea agreement on page 5.  And the proposed conditions are a $250,000 personal recognizance bond signed by one financially responsible person, travel restricted to the Continental United States, surrender of travel documents, with no new applications, supervision as directed by pretrial services, and other standard conditions of supervision.  And I think relevant context here is that this defendant voluntarily traveled back to the United States from the Bahamas shortly after the implosion of FTX, in part for the purpose of beginning meetings with the government.  And so, principally, for that reason, along with his cooperation, we don't have concerns that these conditions will not be sufficient.

THE COURT:  All right.  I find that the conditions are sufficient.

And does the government want to submit a bail order, or do you trust your luck with Andy?

MS. SASSOON:  I always trust Andy, Your Honor.

THE COURT:  OK.  Mr. Singh, you understand what the bail conditions are?

THE DEFENDANT:  I do, your Honor.

THE COURT:  You understand you absolutely have to

N2SZZSINP-DC

comply with them, yes.

THE DEFENDANT:  Yes.

THE COURT:  And you understand if you don't show up as required for sentencing, you could be prosecuted for escape?

THE DEFENDANT:  I missed a word from that, your Honor. Sorry.  If I don't show up at what for sentencing?

THE COURT:  If you don't show up, as directed, for sentencing, you could be prosecuted for escape and subject to another prison term?

THE DEFENDANT:  I understand your Honor.

THE COURT:  OK.  Anything else this morning?

MS. SASSOON:  May I have one moment, your Honor?

THE COURT:  Please.

MS. SASSOON:  Nothing from the government.  Thank you, your Honor.

MR. GOLDSTEIN:  Your Honor, we understand that Mr. Singh will sign the bond and be released today.

THE COURT:  Say again, please?

MR. GOLDSTEIN:  We understand that Mr. Singh will be able to sign the bond and be released on those conditions today.

THE COURT:  OK.

MS. SASSOON:  Yes, your Honor.

THE COURT:  Fine.  OK.  I thank you all.  And we'll sort out all the paper here in due course.  * * *

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300